# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 1, 2010

Lyle W. Cayce
Clerk

No. 08-51235

CYNTHIA GALVAN, Individually and as Next Friend of S G, a
Minor,

Plaintiff-Appellant,

v.

CITY OF SAN ANTONIO; OFFICER RICHARD SMITH, Badge #0352,
Individually and In His Official Capacity; OFFICER RICHARD
GARCIA, Badge #1428, Individually and In His Official
Capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
USDC No. SA-07-CA-0371-OG

Before JONES, Chief Judge, SMITH and ELROD, Circuit Judges.

PER CURIAM:[*]

This case arises from the death of Sergio Galvan, who died after a struggle
with Officers Richard Smith and Richard Garcia of the San Antonio Police
Department on March 23, 2007. The issue before us is whether the district court
properly granted summary judgment to the officers, dismissing Cynthia Galvan's
(the widow of Sergio Galvan) 42 U.S.C. § 1983 claims for excessive force under

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 08-51235

the Fourth and Fourteenth Amendments.[1] The district court found that the officers' conduct was objectively reasonable, and therefore, concluded that there was no constitutional violation. In addition, the court held that Ms. Galvan did not meet her burden of overcoming the officers' assertion of qualified immunity. We AFFIRM.

We review a district court's grant of summary judgment *de novo* and apply the same standards as the district court. *See Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000); *see also* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We view all facts and draw all reasonable inferences in the light most favorable to the non-movant. *A.M. ex rel. McAllum v. Cash*, 585 F.3d 214, 221 (5th Cir. 2009).

When the moving party asserts qualified immunity on summary judgment, the burden shifts to the non-moving party to show that qualified immunity does not apply. *See Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). Determining a defendant's entitlement to qualified immunity consists of two separate inquiries: First, we ask whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). We then ask whether the right violated was clearly established at the time. *Id*. Although it

---

[1] At oral argument, Ms. Galvan made clear that she does not appeal the dismissal of her municipal-liability claim against the City of San Antonio and that she only seeks recovery against Smith and Garcia in their individual capacities. Furthermore, her brief does not address the dismissed unreasonable-seizure claim. Therefore, she has waived that claim on appeal. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

is "often appropriate" to answer these two questions sequentially, courts may decide which of the two prongs to address first. *Pearson*, 129 S.Ct. at 818. Ms. Galvan has not met her burden of establishing excessive force under the first part of the test. Hence, we need not address whether the officers' conduct violated a clearly established right. *Hathaway*, 507 F.3d at 320.

In order to establish an excessive-force violation under the Fourth Amendment, Ms. Galvan must show an "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). Allegations of excessive force by police officers during arrest are analyzed for "objective reasonableness," viewed from the on-scene perspective of a reasonable officer "often forced to make split second judgments . . . about the amount of force that is necessary in a particular situation" without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The objective-reasonableness inquiry is fact-intensive, requiring consideration of circumstances such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The officers, without contradiction, testified in depositions and affidavits about the following events leading up to Mr. Galvan's death: Around 3:00 a.m. on March 23, 2007, they responded to a 911 call about shots fired in a "rough" neighborhood—the area where the Galvans lived. There were also 911 hangup calls from the Galvans' residence. Upon arrival, the officers heard screaming and yelling in the distance. When the officers discovered that Mr. Galvan was the source of the screaming, they identified themselves and offered their assistance. Mr. Galvan ran. During the ensuing chase, Mr. Galvan threw something. When the officers caught up, Smith attempted to communicate with Mr. Galvan, offering to help. Mr. Galvan responded by charging at Smith. Smith attempted

to fend him off with two shots of pepper spray, but to no avail. Mr. Galvan then grabbed the cannister from Smith, and in the ensuing struggle, both fell to the ground. At that point, both officers attempted various open empty-handed techniques to subdue Mr. Galvan, but again, without success. Garcia then warned Mr. Galvan that he would use the Taser, which he did because Mr. Galvan continued to struggle. Despite the Taser use, Mr. Galvan continued struggling, but eventually, the officers were able to handcuff his hands behind his back while he has facedown. According to the officers, Mr. Galvan was very strong, and it is undisputed that he was on cocaine at the time.

In sum, when confronted with a rapidly evolving, volatile situation, the officers reacted with measured and ascending responses—verbal warnings, pepper spray, hand- and arm-manipulation techniques, and then the use of a Taser. They did not use force until Mr. Galvan attacked Smith. Under such circumstances, we find that the force used by the officers was reasonable. Ms. Galvan does not contend otherwise; instead, she disputes the officers' version of the events—namely, that her husband violently resisted arrest. Having carefully reviewed the record, we agree with the district court that Ms. Galvan has not produced evidence to create a genuine issue of material fact on this matter, as is her burden. Accordingly, we hold that the officers did not violate the Fourth Amendment by using excessive force. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

AFFIRMED.